MORRIS (HARMER v.). See Case No. 6,076.

---

## Case No. 9,831.

### MORRIS v. HUNTINGTON.

[1 Paine, 348;[1] 1 Robb, Pat. Cas. 448.]

Circuit Court, D. New York. April Term, 1824.

PATENTS — ACT OF 1793 — PREVIOUS KNOWLEDGE AND USE—NEW PATENTS—SURRENDER— OLD PATENT DECLARED VOID.

1. The first section of the patent law of 1793 [1 Stat. 318], construed in connexion with the other sections of the act, means that the invention should not be known or used as the invention of any other person than the patentee before the application for a patent.

[Cited in Whitney v. Emmett, Case No. 17,-585; Reed v. Cutter, Id. 11,645.]

2. If the invention have got into use while the inventor was practising upon it with a view to improve it before applying for a patent, such use does not invalidate the patent; and the motive for the delay is a question for the jury.

[Cited in Treadwell v Bladen, Case No. 14,-154; Shaw v. Cooper, 7 Pet. (32 U. S.) 317; Jones v. Sewall, Case No. 7,495.]

3. One who has patented his invention cannot take out a new patent for the same invention, until the first is surrendered, repealed, or declared void.

[Cited in brief in Treadwell v. Bladen, Case No. 14,154. Cited in Mathews v. Flower, 25 Fed. 830.]

4. The obstacle of an invalid patent may be removed by having it declared void after a verdict

[1] [Reported by Elijah Paine, Jr., Esq.]

against it, or by having a vacatur entered ex parte in the department of state on a surrender of the patent. But the provisions of the 6th section of the act, do not enable a patentee to declare his own patent void, and a verdict in a suit on the second patent in favour of such patent, does not avoid the first patent.

5. It seems that on surrendering a patent and taking out a new one, the latter should be for only the unexpired part of the fourteen years since obtaining the first patent.

6. Whether a new patent can be taken out where a patent has been declared void under the 6th section of the act? Quere.

[7. Cited in Wilson v. Rousseau, Case No. 17,-832, to the point that a defective specification renders letters patent absolutely void, no matter how innocent of fraudulent design is the inventor, nor how beneficent his invention.]

This was an action on the case, brought by the plaintiff against the defendant, for infringements by him of a patent issued to the plaintiff May [15], 1822, for an improvement in the stopcock. The specification of the patent contained a clear description of the instrument, so that artists could make it from such description, and at its close, the improvements claimed under the patent were particularized. Evidence was given by the plaintiff showing the time of the invention to be September, 1815; that the plaintiff was the inventor; that the invention was useful; and that the defendant had made and sold instruments which were infringements of the patent. On a cross-examination of the plaintiff's witnesses, it appeared that the plaintiff had taken out a patent in 1816, for an improved block-tin stopcock, the specification of which was proved by the witness to describe the same instrument as the one described in the specification of the patent of 1822, with this difference, that in the former the particular improvements claimed were not stated. It appeared in evidence on the part of the plaintiff, that certain parts of the instrument, described generally as part of the instrument in both patents, but not claimed in the patent of 1822, as improvements of the patentee, had been in use prior to the patent of 1815. Upon this evidence,

C. D. Colden, G. Griffen, and G. W. Strong, for defendant,

Moved for a nonsuit (opinion of Van Ness, J., No. 4 U. S. Law J.; Whittemore v. Cutter [Case No. 17,601]; Odiorne v. Amesbury Nail Factory [Id. 10,430]; Moody v. Fisk [Id. 9,745]; Coll. Pat. 70, 170; Gods. Pat. 200; Fessen. Pat. 50, 173), on two grounds: 1. That it appeared that the instrument had gone into use before the date of the patent of 1822; and 2. That the patentee had a prior patent for the same thing, which had not been repealed, surrendered, nor declared void.

Under the first point it was contended: That by the words of the first section of the patent act, the invention must not have been used before the application for a patent. That the other sections of the patent law, the phraseology of which was indefinite,

should be construed in subordination to the first section. That this construction was fortified by the words of the first section of the law of 1800 [2 Stat. 37], extending the patent act to aliens. That the instrument having gone into the use or knowledge of the public, the inventor had no secret to disclose as a consideration for the grant by the public. That in England the law was unquestionably settled to this effect—and that the English decisions should be adopted here, inasmuch as they were founded in the nature of the subject, and as our courts had adopted English decisions on English statutes as applicable to the construction of statutes in this country, where there was much more difference in the phraseology, than existed between our patent law and the English statute. That the point in question had never been decided in this country under our present patent, before the decision of Judge Van Ness, which was in point in their favour. That very injurious consequences would result, if inventors might lie by, and after the public had got into the use of a thing, claim it by a patent.

On the second point it was contended: That the patent of 1816 was an estoppel to the plaintiff to take out another patent for the same thing, before the repeal or surrender of such prior patent. That the prior patent was not on its face void, but was voidable only, and that not by the plaintiff himself, but only by third persons. That to allow the plaintiff to allege his first patent to be void, would be embarrassing the court with the trial of two issues, in which it would be inconsistently thrown on the defendant to prove that the first patent was good and the second bad. That at any rate the plaintiff should have surrendered the first patent before taking out the second—the course in England being so. He should also in such case have taken out the second patent, not for fourteen years from its date, but for the residue of the time, computing from the date of the first patent. That on the plaintiff's grounds, patentees would, by taking out patents, insidiously defective, secure to themselves a perpetuity. That the acts in favour of Oliver Evans were a legislative decision on the subject; and that the case of Odiorne v. Amesbury Nail Factory [supra] was in point and decisive.

T. A. Emmet, S. P. Staples, and D. Lord for plaintiff,

In reply (Barrett v. Hall [Case No. 1,047]; Goodyear v. Mathews [Id. 5,576]; Woodcock v. Parker [Id. 17,971]; Davies, Pat. 448; Evans v. Weiss [Case No. 4,572]), contended on the first objection: That the 6th, 7th and other sections of the act showed that reference was to be had to the time of invention in considering the question of prior use. That the general phraseology of the act was inconsistent with a literal construction of the first section. That a literal construction of that

section was felo de se, and it must therefore be construed in subordination to the rest of the act. That the policy of the patent act in England and its words differed from our law. That in England it went on the ground of a bounty from the crown; in this country on the ground of protecting the common law right of the inventor to his invention. That the point in question had been directly decided in Evans v. Weiss [supra], and in the case of Goodyear v. Mathews [supra].

On the second point: That the doctrine of estoppel did not apply; the grant was void so as to prevent any right from vesting. That the prior patent, on the state of the evidence, was void, not voidable: voidable implies that the thing is capable of confirmation, which the first patent is not. That a surrender of the first patent could not be made, there being no provision in the law to authorize it; as is the case in England, by the inherent power of the chancellor. That as the patentee had enjoyed no legal protection under the first patent, it should not be computed against him as part of the fourteen years, at any rate that the question of an extra extension of time could not properly arise until the lapse of fourteen years from the date of the first patent.

THOMPSON, Circuit Justice (charging jury). The questions presented by the facts in this cause are of great importance, and not unattended with difficulty, and deserve a more deliberate consideration than can be given them in the course of a trial.

The first question is, whether the fact that the invention was introduced into use by the patentee himself, as his invention prior to the application for the patent, rendered the patent invalid. It appears to be settled law in England, that if an invention had been introduced into use by the patentee himself, and known and used by others before the date of the patent, such disclosure and use will destroy the patent. There is however a difference between the English law and the acts of congress on this subject. In the English statute it is stated precisely from what period the fourteen years are to commence: they are to run from the date of the patent. But there is no such phraseology in the act of congress. The English statute speaks of the invention to be patented, being such as others, before the date of the patent, shall not use; and consequently if a patentee in England have so disclosed his invention as that it be put in use before the date of the patent, he is not entitled to the patent. Our act does not contain these provisions. There is some incongruity in the phraseology of our patent law of 1793, and it is inartificially drawn in several parts. A correct interpretation of it requires that the general scope and object of the law and all its clauses should be taken into view together. Were no other part of the act than the first section to be

read, it would seem to preclude a patent for any invention used before the application for a patent. But taking a general view of the clauses of the act and of its object it seems to me that this section must be controlled by the other parts of the act. As it respects the patentee, the great object of the law is to secure to inventors the benefit of their invention for fourteen years. The third section, prescribing the oath to be taken, only speaks of the applicant's being the true inventor. It says nothing about the invention's not having been in use before the application. So also the sixth section which specifies the cause for which a patent may be declared void, shows the great object of inquiry to be whether there has been a prior use of the improvement: Prior to what? Prior to the invention of the patentee. The same remarks are applicable to the 10th section, and indeed such seems the fair import of all the sections of the act of 1793, but the first. I therefore think that the first section should be construed in connexion with the other parts of the act, to mean that the improvement or discovery should be unknown and not used as the invention of any other than the patentee, before the application for a patent.

The objection drawn by the defendant's counsel from the first section of the act of 1800, placing aliens on the same grounds, in certain respects, as citizens, is not a substantial one. This section first proceeds to extend the benefits of the patent law to aliens, equally as they are enjoyed by citizens, and under the same limitations. Aliens must take the same oath as to being the inventors, &c. Then comes the proviso requiring them to swear that the invention has not been known or used in this or any foreign country. This proviso is a limitation on the enacting clause according to the general rule of construction, and is to be construed as limiting and restraining the grant to which it is applied. It puts the alien on grounds somewhat different from those of a citizen, requiring an oath of something more than is required of a citizen: and this view strengthens the construction given above to the first section of the act of 1793. Then the close of the proviso goes on to state, that if it shall appear that the thing patented was known or used previous to the application for a patent, the patent shall be void. It seems reasonable to restrict an alien in this manner from taking out a patent, for what has been in use abroad, inasmuch as our own citizens cannot patent a foreign invention. Evils may undoubtedly exist under this construction of the law. Expensive machines may be made before a patent is taken out; and persons who have in this way innocently incurred expenses, may be stopped short in their undertakings. But I am inclined to think that under such circumstances, a patent should not be permitted to operate to the prejudice of persons thus situated, on the principle that innocent third persons are not to be injured by relation back, so as to deprive them of a right lawfully acquired. And if a person knowing of an invention proceeds to put it in use, the inventor not having secured his right by patent, the latter ought not to be permitted to take away that which was previously lawfully made. No man is to be permitted to lie by for years, and then take out a patent. If he has been practising his invention with a view of improving it, and thereby rendering it a greater benefit to the public before taking out a patent, that ought not to prejudice him. But it should always be a question submitted to the jury, what was the intent of the delay of the patent, and whether the allowing the invention to be used without a patent, should not be considered an abandonment or present of it to the public.

The next question is, whether it is not a valid objection to the second patent that the patentee has a prior patent for the same thing not surrendered, repealed, or declared void. I think this objection insurmountable. A prior patent must be got rid of before a second can be taken out. Why should a second patent be taken out before a prior one is avoided, although invalid, if the patentee is enjoying the full benefit of it? It is objected, that the patentee is in difficulty as to getting the first patent out of the way. But if the patentee should sue on the first patent, and the defendant should succeed in the suit, the patent could be declared void: and if the patentee had a right to the thing patented, the objection of a prior patent would be removed. Besides, I see no insuperable objection to entering a vacatur of the patent of record in the department of state, if taken out inadvertently and by mistake. All the proceedings in that department on the subject of patents are ex parte, except in the case of interfering applications. The department acts rather ministerially than judicially, and upon the representation of the applicant without entering into an examination of the question of right: and there seems to be no good reason why on a like ex parte application the patent may not be surrendered and cancelled of record, if no misconduct be imputable to the patentee in taking it out. And in such case as the exclusive right is not to exceed fourteen years, the second patent may be limited according to circumstances, and thereby secure both to the patentee and the public their respective rights. The only record evidence of the patent is that in the department of state, and in the letters patent in the hands of the patentee; and if the letters patent were surrendered and cancelled of record, the invention would be open to public use without hazard, so far as depends on such patent. And if the patentee does not choose to do this, he must have the patent made void in some other way by adversary

proceedings. The provisions of the 6th section of the act of 1793, do not apply here so as to enable the plaintiff to treat his patent as void. The proceedings under this section are the acts of the defendant only, and the plaintiff from this section has no right to set up a defect in his own patent. This court cannot enter a vacatur on the first patent, and that patent is not void on the face of it. The plaintiff's difficulty here is, that the prior patent is too broad. This is good ground for the defendant to take according to the decision of the supreme court of the United States. For the patentee must take his patent for the improvement only., But I do not see how the verdict of the jury in this suit on the second patent, can avoid the first: that must be a subject of litigation and proof in every case which is tried under the second patent.

It is objectionable on general principles to allow a patentee in a court of law, to show his own patent void. It being issued on his own representation and according to his own specification, as to the extent of the right claimed, he is estopped by his own act. He certainly is not to be permitted to allege, that he obtained his patent fraudulently, or that there was any concealment or addition with respect to his specification with a view to deceive the public, or to set up his own misconduct in any other respect. And should he allege, that he had innocently and in ignorance of the law, procured a patent broader than his invention, he is not without the answer, that he is chargeable with a knowledge of the law, and cannot set up his ignorance of it to avoid his own act. Whether, after the first patent has been declared void, after verdict under the sixth section in a case free of fraud, a new patent can be taken out, is a question which does not here arise. But I am inclined to think that a surrender of the prior patent might be made, and that the secretary of state might grant a new one, under a statement of the circumstances, although not for the period of fourteen years from the date of the second patent, as the patentee has enjoyed the exclusive right for a part of the fourteen years. This construction, as to the effect of a prior patent, seems necessary to prevent a patentee from enjoying his exclusive right for a period longer than fourteen years, and indeed for an indefinite period.

As to the argument that fourteen years from the date of the first patent have not yet expired, so that the objection cannot be made, it appears to me untenable. The second patent is for fourteen years, and that being within the time limited by the act of congress, it is good upon the face of it. And the objection, that the patentee has enjoyed the benefit of the invention for a part of the fourteen years under a prior patent. not being amongst any of the objections which by the acts of congress may be set up by third persons to avoid the patent, the objection cannot be made after the expiration of the fourteen years, and so in this case the patentee would have the benefit of his patent-right for twenty years instead of fourteen.

On the whole I am of opinion that the second objection is fatal, and that a nonsuit must be ordered.

But the counsel of the plaintiff suggesting that it had been doubted whether a writ of error returnable in the supreme court would lie on a judgment of nonsuit, and praying the court to charge the jury on the points discussed, THE COURT accordingly directed a verdict for the defendant, with liberty to the plaintiff to move for a new trial on the points of law.